UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

---

DARNELL ZANDERS,

      Plaintiff,

v.                                      Case No. 05-CV-73779-DT

JOHN E. POTTER

      Defendant.
_____/

**OPINION AND ORDER GRANTING DEFENDANT'S
"MOTION FOR SUMMARY JUDGMENT"**

Pending before the court is Defendant's "Motion for Summary Judgment." The court has reviewed the briefs and concludes that a hearing is unnecessary. *See* E.D. Mich. LR 7.1(e)(2). For the reasons stated below, the court will grant Defendants' motion.

**I. BACKGROUND**

Plaintiff Darnell Zanders complains because he received a letter of warning in connection with his employment. Plaintiff (an African-American) was Information Systems Manager for the United States Postal Service in Detroit until August 14, 2000. (Compl. at ¶¶ 1, 9.) From August 14, 2000 until August 14, 2001, Plaintiff was temporarily assigned to work in Inkster, Michigan. (*Id.* at ¶ 10.) During that period, Michael Pawlus (Caucasian) served as Acting Manager of Information Systems in Plaintiff's absence. (*Id.* at ¶¶ 11-12; Def.'s Mot. at 1.) Prior to Plaintiff's departure and subsequent to his return, Mr. Pawlus held the position of Information Systems Specialist, a position for which Plaintiff was Mr. Pawlus' supervisor. (Pawlus' Dep. at 8,

11-12; Def's Mot. at 2.) Plaintiff returned to his Detroit position during the week of August 14, 2001. (Def.'s Mot. at 2.)

On August 2, 2002, Plaintiff received a "Notice of Proposed Letter of Warning in Lieu of a 14-day Suspension" dated July 30, 2002 from his supervisor, John Talick, a Caucasian male. (Compl. at ¶ 16, Def.'s Mot. at 4.) This letter was approved by Mangala Gandhi, an Asian-Indian female who was Great Lakes Area Manager of Human Resources. (Def.'s Mot at 5.) The letter stated that Plaintiff failed to discharge the duties of his position in violation of the Postal Service Standard of Conduct and described three specific allegations: failure to have a standard operating procedure ("SOP") in place for the proper inputting of leave, failure to properly monitor time and attendance procedures, and failure to secure "cc mail" messages. (Compl. at ¶ 17.) Plaintiff appealed the letter of warning, and Ms. Gandhi upheld the letter of warning. (Def.'s Mot. Ex. 14.)

Plaintiff argues that the letter's allegation of failure to have an SOP is racially discriminatory because the Time and Attendance Computer System ("TACS") was implemented while he was working in Inkster when Mr. Pawlus was Acting Manager. (Pl.'s Resp. at 5-6.) Therefore, there were periods of time in which each was in the position of Manager and neither implemented an SOP for TACS, but Plaintiff was disciplined and Mr. Pawlus was not. (*Id.* at 6.) Plaintiff also argues that he was never directed to create an SOP and that postal regulations did not require an SOP. (*Id.*)

The letter alleges that Plaintiff failed to monitor time and attendance procedures by describing how some of the hours for Plaintiff and some of the employees he supervised were improperly inputted into TACS. (Def.'s Mot., Ex. 12.) Specifically, in

certain instances, "annual leave" and "sick leave" were entered as "workhours" which prevented leave from being deducted from the balance allotted to an employee. (*Id.*) Plaintiff alleges that some of the errors in the Plaintiff's entries were actually the fault of Mr. Pawlus, who during the period in question was under the supervision of Plaintiff, and another employee. (Pl.'s Resp. at 6; Def.'s Mot. at 2.) Furthermore, Plaintiff asserts that when Mr. Pawlus was Acting Manager, he made identical errors and Plaintiff was disciplined, but Mr. Pawlus was not. (Pl.'s Resp. at 7.)

The allegations relating to the "cc mail" assert that Plaintiff did not ensure that Mr. Talick's private e-mail files were secured. (Def.'s Mot., Ex. 12.) Plaintiff claims that this allegation against him is unfounded because the e-mails were actually on a dump server accessible only to IT staff. (Pl.'s Resp. at 9.) Furthermore, Plaintiff claims that the e-mails were copied to the dump server during the time period in which he was in Inkster and Mr. Pawlus was in charge. (*Id.*) Therefore, Plaintiff asserts that he was disciplined and Mr. Pawlus was not, though the allegation relating to the "cc mail" was entirely the fault of Mr. Pawlus. (*Id.*)

## II. STANDARD

Rule 56 of the Federal Rules of Civil Procedure, which governs summary judgment motions, provides in part that:

> [t]he judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(c). The moving party has the burden of demonstrating that there is no genuine issue as to any material fact, and summary judgment is to be entered if the

3

evidence is such that a reasonable jury could find only for the moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Mt. Lebanon Per. Care Home, Inc. v. Hoover Univ., Inc.*, 276 F.3d 845, 848 (6th Cir. 2002). It is not necessary for the moving party to support its motion with affidavits or other similar forms of evidence; rather, the movant need only show that "there is an absence of evidence to support the non-moving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

The moving party may meet his initial burden by pointing out to the court that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his case. *Betkerur v. Aultman Hosp. Ass'n*, 78 F.3d 1079, 1087 (6th Cir. 1996). If the moving party meets this initial burden, the non-moving party must then present admissible evidence establishing a genuine material issue of fact. *Id.* The non-moving party cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must "present affirmative [admissible] evidence in order to defeat a properly supported motion for summary judgment." *Id.* The party who bears the burden of proof at trial must present evidence establishing a jury question as to each element of his claim. *Davis v. McCourt*, 226 F.3d 506, 511 (6th Cir. 2000).

Failure to present sufficient evidence on an essential element of a claim or defense renders all other facts immaterial for purposes of summary judgment. *Elvis Presley Enters., Inc. v. Elvisly Yours, Inc.*, 936 F.2d 889, 895 (6th Cir. 1991). Although the non-moving party is entitled to a review of the evidence in the light most favorable to him, he is required to do more than simply show that there is some "metaphysical doubt

as to the material facts*.*" *Pierce v. Commonwealth Life Ins. Co.*, 40 F.3d 796, 800 (6th Cir. 1994) (quoting *Matsushita Elec. Ind. Co.*, 475 U.S. at 586)).

"[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson*, 477 U.S. at 250. Therefore, the court must necessarily examine the evidence provided in a light that is most favorable to the non-moving party, *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962), and decide "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-252.

### III.  DISCUSSION

Plaintiff's Title VII race discrimination disparate treatment claim must be considered under the burden-shifting analytical framework established by the Supreme Court.  See *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  This approach requires Plaintiff to first establish a *prima facie* case of discrimination.  In order to establish his *prima facie* case, Plaintiff must demonstrate that: "(1) he is a member of a protected class; (2) he suffered an adverse employment action; (3) he was qualified for the position; and (4) was treated differently than similarly situated individuals outside of his protected class." *Smith v. City of Salem, Ohio*, 378 F.3d 566, 570 (6th Cir. 2004).  If Plaintiff satisfies this burden, then Defendant must rebut the inference of discrimination created by the *prima facie* case by articulating a legitimate, nondiscriminatory reason for its employment action.  *McDonnell Douglas*, 411 U.S. at 802.  Finally, Plaintiff's claim can still succeed if he can prove by a preponderance of the evidence that the Defendant's proffered reason is merely a pretext for discrimination.  *Id.* at 804.  At least

5

for purposes of this motion, Defendant has not contested that Plaintiff has fulfilled the first and third prongs of the *prima facie* case.

### A.  Adverse Employment Action

In order to demonstrate that he suffered an adverse employment action for the second prong of the *prima facie* case, Plaintiff must identify a "materially adverse change in the terms and conditions of his employment."  *Smith v. City of Salem*, 378 F.3d 566, 575 (6th Cir. 2004) (citing *Hollins v. Atlantic Co. Inc.*,188 F.3d 652, 662 (6th Cir. 1999)).  In *Hollins*, a Title VII case, the Sixth Circuit applied the requirements of a "materially adverse change" of *Crady v. Liberty National Bank & Trust Co. Of Indiana*, 993 F.2d. 132, 136 (7th Cir. 1993), which were adopted by the Sixth Circuit for application to an Americans with Disabilities Act claim in *Kocsis v. Multi-Care Management, Inc.*, 97 F.3d 876, 886 (6th Cir. 1996).  *Hollins*, 188 F.3d at 662.  For an adverse employment action to be a materially adverse change in the terms and conditions of employment:

> [It] must be more disruptive than a mere inconvenience or an alteration of job responsibilities.  A materially adverse change might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation.

*Crady*, 993 F.2d at 136.

Furthermore, "the Sixth Circuit has consistently held that *de minimus* employment actions are not materially adverse and, thus, not actionable." *Bowman v. Shawnee State Univ.*, 220 F.3d 456, 462 (6th Cir. 2000).  Plaintiff argues that *Bowman* is distinguishable because that case involved a temporary transfer rather than a letter of

warning. (Pl.'s Resp. at 3 fn.1.) Even though a temporary transfer is technically different from a letter of warning, these employment actions are similar in that they both constitute minor employment action, more akin to an "inconvenience." *See Smith*, 378 F.3d at 575 ("A bruised ego, a mere inconvenience or an alteration of job responsibilities is not enough to constitute an adverse employment action.") (quotations and citations omitted). Indeed, in *Bowman*, the Sixth Circuit held that "even if a tangible job detriment has been suffered," actions can be considered *de minimis*, and therefore not actionable, where, as here, "further remedial action is moot and no economic loss occurred." *Bowman*, 220 F.3d at 462 (citing *Kauffman v. Allied Signal, Inc., Autolite Div.,* 970 F.2d 178 (6th Cir.1992)). It is undisputed that the terms and conditions of Plaintiff's employment remained the same; he did not lose his job, his title, or any benefits as a result of the letter of warning.

In Footnote 1 of his response, Plaintiff states that "[t]he record in this case provides evidence of adverse employment action sufficient to go to a jury" and refers generally to sixteen pages of his deposition. (*See* Pl.'s Resp. at 3 fn. 1.) The first half of the pages cited refer to a performance review in which Mr. Talick gave Plaintiff a "meets expectations" merit rating rather than "exceeds" or "far exceeds," which may have led to a lower raise. (Pl.'s Dep. at 13:17, Def.'s Ex. 1.) Even viewing this testimony in light most favorable to Plaintiff, the performance review is not relevant to this action, which is based on the letter of warning (Compl. at 16.) Furthermore, even if it were, the Sixth Circuit has explicitly held that a mid-range performance review is not an actionable adverse employment action. *Primes v. Reno*, 190 F.3d 765, 767 (6th Cir. 1999). The second half of the pages cited refer to whether the letter of warning would

7

remain in Plaintiff's personnel file and how it could affect his career. (Pl.'s Dep. at 69:11.) The letter's alleged permanency, however, does not render it a materially adverse change in the terms and conditions of employment.[1]

The Sixth Circuit has held that a mid-range performance evaluation was not the type of adverse employment action contemplated by Title VII because "[i]f every low evaluation or other action by an employer that makes an employee unhappy or resentful were considered an adverse action, Title VII would be triggered by *supervisor criticism* or even facial expressions indicating displeasure." *Primes*, 190 F.3d at 767 (emphasis added). A letter of warning is exactly the kind of supervisor criticism that *Primes* holds is not a materially adverse employment action. Plaintiff has not made out a *prima facie* case of racial discrimination because he has not produced evidence of an adverse employment action. Summary judgment must therefore be entered for the Defendant.

### B.  Similarly Situated

Alternatively, even if Plaintiff were able to demonstrate an adverse employment action, Defendant would still be entitled to summary judgment because Plaintiff has not shown that he "was treated differently than similarly situated individuals outside of his protected class" to make out the fourth prong of his *prima facie* case. *Smith*, 378 F.3d at 570. In order for two employees to be considered similarly situated in a Title VII

---

[1] In the same section of the deposition, Plaintiff states that he has received a "far exceeds" merit rating at his new position at the Royal Oak post office, which is higher than his previous rating. (*Id.* at 70.) The court therefore notes that the letter of warning's asserted permanence has apparently not harmed his employment with the United States Postal Service, especially inasmuch as Plaintiff indicated earlier in the deposition that a "far exceeds" rating would entitle him to a "5.5 or 5 percent salary increase." (*Id.* at 16.)

disparate treatment case, "the plaintiff must prove that all of the relevant aspects of his employment situation are 'nearly identical' to those of the . . . employees who he alleges were treated more favorably." *Pierce v. Commonwealth Life Ins. Co.*, 40 F.3d 796, 802 (6th Cir. 1994).  In analyzing "relevant factors," the Sixth Circuit has stated:

> [T]o be deemed 'similarly situated,' the individuals with whom the plaintiff seeks to compare his/her treatment must have dealt with the same supervisor, have been subjected to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it.

*McMillan v. Castro*, 405 F.3d 405, 413 (6th Cir. 2005) (citing *Mitchell v. Toledo Hospital*, 964 F.2d 577, 583 (6th Cir. 1992)).

Plaintiff argues that during the time Mr. Pawlus was Acting Manager of Information Systems, he held the exact same position as Plaintiff, with its accompanying duties, office, subordinates, and supervisor.  (Pl.'s Resp. at 4.)  Defendant, on the other hand, argues that Plaintiff and Mr. Pawlus are not similarly situated due to the temporary nature of Mr. Pawlus's term as Acting Manager of Information Systems.  (Def.'s Mot. at 8.)

Even though Mr. Pawlus' position as Acting Manager of Information Systems may seem facially similar to Plaintiff's position as Manager of Information Systems, the undisputed fact that the position was temporary effectively eviscerates Plaintiff's argument that they were "similarly situated."  Mr. Pawlus held the position of Information Systems Specialist both before and after his term as Acting Manager, which was a non-supervisory role for which Plaintiff was Mr. Pawlus' supervisor.  Furthermore, Mr.

9

Pawlus was not promoted to Information Systems Manager until July 12, 2003, almost two years after Plaintiff's return to Detroit.

It is undisputed that, for a time, both Plaintiff and Mr. Pawlus dealt with the same supervisor, Mr. Talick. However, the temporary nature of Mr. Pawlus's position constitutes a "differentiating or mitigating circumstance[] that would distinguish their conduct or the employer's treatment of them for it." *McMillan*, 405 F.3d at 413. While the court's conclusion that Plaintiff suffered no materially adverse employment action renders the "similarly situated" analysis moot, the court is inclined to find that the expectations for an employee in a non-supervisory role who temporarily assumes a supervisory role would be lower, or at least different, than the expectations for a permanent manager. Mistakes of an employee who is not yet assumed a managerial position are far more forgivable than the mistakes of an employee who has been entrusted with a permanent managerial position. In this way, the standards of evaluation for Plaintiff and Mr. Pawlus are not the same, and the impermanence of Mr. Pawlus's position created a differentiating circumstance that distinguishes Mr. Talick's treatment of them for their conduct. Thus, even if the court were to find sufficient evidence of an adverse employment action, Defendant would nonetheless be entitled to summary judgment because the court would find as a matter of law that Plaintiff and Mr. Pawlus are not similarly situated.

### IV. CONCLUSION

For the reasons discussed above, IT IS ORDERED that Defendants' "Motion for Summary Judgment" [Dkt. #10] is GRANTED.

        S/Robert H. Cleland
        ROBERT H. CLELAND
        UNITED STATES DISTRICT JUDGE

Dated: July 21, 2006

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, July 21, 2006, by electronic and/or ordinary mail.

        S/Lisa Wagner
        Case Manager and Deputy Clerk
        (313) 234-5522

S:\Cleland\JUDGE'S DESK\C3 ORDERS\05-73779.ZANDERS.SJ.TitleVII.AdverseAction.wpd